IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
UNITED STATES OF AMERICA : CASE NO. 1:06 CR 00205
:
Plaintiff :
:
-vs- : MEMORANDUM OF OPINION AND
: ORDER DENYING DEFENDANT'S
: MOTION TO SUPPRESS
MARIO D. DAVIS :
:
Defendant :
------------------------------------------------------ :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is defendant Mario Davis' ("Mr. Davis") motion to suppress any evidence seized during a search of his person by Mansfield, Ohio police officers as lacking in either probable cause or reasonable suspicion and, thus, a violation of his rights under the Fourth Amendment. (Docket No. 14). In response, the government maintains the officers operated within the bounds of the law to effect the arrest of Mr. Davis for obstruction and violation of the local open container law and, further, argues the officers possessed reasonable suspicion for a limited search of Davis' person. (Docket No. 16).

Pursuant to the reasoning set forth below, this Court adduces, as a matter of law, that the officers possessed reasonable suspicion to perform a limited search of Mr. Davis' person, a search that yielded a loaded firearm in the defendant's back pants pocket.

## I. FACTUAL BACKGROUND

The government relates that on the 23 February 2006 at approximately 7:30 p.m. Mansfield police, driving on patrol in a marked car, passed a known drug house at 157 Distl Avenue in Mansfield, Ohio. (Pl. Brief, Exhibit 1, Police Report). The patrolling officers witnessed a male leaving the drug house and, as the patrol car drove up, the male looked toward the patrol car and began to walk faster toward a parked 1996 Pontiac Grand AM.

The uniformed officers stopped the patrol car and approached the male who, by that time had arrived at the Pontiac in which were seated three passengers. The male had one hand held inside the car, which the approaching officers asked him to remove so that he might show both hands. The male ignored the officers' request and instead opened his hand and dropped inside the car a bag of what turned out to be crack cocaine. The officers then arrested the male and handcuffed him near the rear of the Pontiac.

As a safety precaution during the arrest, the officers requested the three occupants in the Pontiac to place their hands on the headrests in the car in plain view. The passenger in the left rear seat of the Pontiac, defendant Mario Davis, failed to comply. The government relates that Mr. Davis continued to remove his hands from the

2

headrest, on one occasion reaching down to the floorboard of the vehicle.  In addition, Mr. Davis picked up a brown bag containing an open can of beer and threw it out of the rear car window.  In another instance Mr. Davis placed his hands between his legs and reached toward the floorboard of the Pontiac.

As a result of his non-compliance, the officers ordered Mr. Davis from the vehicle.  After Mr. Davis exited from the Pontiac, the officers attempted to perform a safety pat-down which Mr. Davis resisted by reaching for his rear trouser pocket.  Officers then handcuffed Mr. Davis and proceeded to pat him down.  Inside his rear pants pocket the officers found a loaded Jennings, model J-22, .22 caliber pistol, serial number 436982.  That seized evidence is the gravamen of the current indictment by the government and the instant suppression motion by Mr. Davis.

Mr. Davis seeks to suppress the firearm evidence as ill gotten fruit of an illegal search in which the officers exceeded their authority under the Fourth Amendment.  Mr. Davis maintains the officers lacked probable cause to believe that he had or was committing a crime and did not possess the reasonable suspicion necessary to justify a stop under Terry v. Ohio, 392 U.S. 1, 22-24 (1968).  (Def. Brief p. 3).

The government responds in opposition that it did possess probable cause to arrest Mr. Davis for obstructing official business in violation of Ohio Revised Code § 2921.31 and for violating the State's open container law pursuant to Ohio Revised Code § 4301.62.  (Pl. Brief pp. 13-14).  It further maintains the officers possessed reasonable suspicion to effect a limited search under Terry pursuant to the totality of the circumstances.  (Pl. Brief pp. 18-27).

In reply, Mr. Davis contends that he was seized for purposes of the Fourth Amendment when the officers first requested he place his hands on the headrest in front of him.  (Def. Reply Brief, pp. 3-5).  Mr. Davis also contests the governments assertion of probable cause predicated on his allegedly obstructing official business in violation of ORC § 2921.31 and violating Ohio's open container law, ORC § 4301.62.  (Def. Reply Brief, pp. 4-5).   Mr. Davis specifically denies the government's assertion that he threw a beer can out of the window of the Pontiac.  Id.  Mr. Davis also contends that Ohio's open container law requires that a beer can, possessed in violation of the open container law, must have had beer in it at the time of the alleged violation.

The Court need not reach the contested fact of whether or not Mr. Davis threw an open can of beer out of the car window during this incident, or whether the officers possessed probable cause to arrest Mr. Davis for that act, where it is apparent from the briefing, the uncontested facts, and the prevailing law that the officers did possess reasonable suspicion to conduct a brief and protective search of the defendant's person under Terry.

In denying Mr. Davis' suppression motion, the Court will review the facts of the instant matter and the prevailing law without the requested evidentiary hearing.  As Sixth Circuit law makes clear, "[a] district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear upon the legality of the search."  United States v. Thompson, 2001 WL 820905 *4 (6th Cir. 2001) (citing United States v. Black, 181 F.3d 104, 1999 WL 357759, at *3 (6th Cir. 1999) and United States v. Mejia, 69 F.3d 309, 318 (9th Cir. 1995)).  In matters such as the instant case, however, the Sixth Circuit has recognized "a district court can forgo conducting an

4

evidentiary hearing if sufficient content remains to support a finding of [a lawful search] after the contested items are set aside." Thompson, 2001 WL 820905, at *4.

## II. LAW AND ANALYSIS

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection extends to shield the individual from unreasonable arrests and searches by requiring the executed actions rely on probable cause. Draper v. United States, 358 U.S. 307 (1959). Our judiciary recognizes, as well established, a defendant's right to urge the suppression of evidence obtained in violation of the Fourth Amendment if the defendant demonstrates an absence of probable cause or reasonable suspicion for the search and seizure. Aldeman v. United States, 394 U.S. 165 (1969); Rakas v. Illinois, 439 U.S. 128 (1978).

The question of whether an officer has reasonable grounds to 'stop' and 'frisk' falls directly within the Fourth Amendment's proscription against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Police officers are permitted to conduct stops based on reasonable suspicion that criminal activity is afoot and to frisk the detained citizen if they have a reasonable belief the person is armed. Terry, 392 U.S. at 30, 88 S.Ct. 1868. "[W]here nothing in the initial stages of the encounter serves to dispel his [or her] reasonable fear for his [or her] own or others' safety, he [or she] is entitled for the protection of himself [or herself] and others in the area to conduct a carefully limited search of the outer clothing of such

persons in an attempt to discover weapons which might be used to assault him [or her]." Id.

Given the uncontested facts of this case, the evidence found on Mr. Davis' person is not subject to suppression even if the officers possessed something short of probable cause toward the defendant. Courts have long held that a law enforcement officer who lacks probable cause sufficient to justify an arrest may briefly detain an individual for investigative purposes without violating the Fourth Amendment if the officer possesses a "reasonable suspicion that [the defendant] was engaged in wrongdoing when [the officer] encountered him." U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (courts have taken to calling these brief investigative seizures, Terry stops). See also Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Lopez-Arias, 344 F.3d 623, 627 (6th Cir.2003) (holding that "courts have recognized that a law enforcement officer who lacks probable cause to justify an arrest may nevertheless briefly detain an individual without violating the Fourth Amendment if the officer possesses a reasonable and articulable suspicion that the individual has committed a crime").

Defendant argues that prior to the formation of any reasonable suspicion a seizure occurred (and the Terry stop began) when the officers ordered him to keep his hands on the headrest in the car in plain view. Def. Br. at 4-5. The government argues that defendant was not truly seized until the officers ordered him out of the car and asked him to submit to a pat down search; Mr. Davis' resistance caused the officers to handcuff him prior to the pat down search for their own safety. The government's argument is predicated in part on the Supreme Court's decision in California v. Hodari

6

D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), which held that a defendant must submit to a show of authority in order for that defendant to be seized for Fourth Amendment purposes. See id. at 629, 111 S.Ct. 1547. At the point the defendant asserts he was seized, the officers, for their own safety, were entitled to command Mr. Davis and the other two passengers to keep their hands in view. The officers were entitled to enforce the command until the situation was evaluated. That Mr. Davis did not comply, even when ordered out of the vehicle, is proof under Hodari that he was not seized until the officers handcuffed him in an effort to ensure their safety and Mr. Davis' compliance to a reasonable, lawful request.

With regard to the officers' request that Mr. Davis exit the vehicle, Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) stands for the proposition that without any showing the particular suspect may be armed, an officer may require a person lawfully stopped to step from a vehicle in order to diminish "the possibility, otherwise substantial, that the driver can make unobserved movements." Id.[1] The Mimms rule is equally applicable to passengers such as Mr. Davis pursuant to Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Both Mimms and Wilson recognize the minimal added intrusion of a request to exit a vehicle as justified in the interest of the officer's safety.

---

[1] In United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), where there was reasonable suspicion the driver was armed and dangerous, the Court held the officer's conduct was "well within the permissible range" when he had both the driver and the passenger step out of the car, resulting in the observation of a gun through the passenger door.
    If the suspect does not obey the order to alight, the officer may utilize a show of force to ensure compliance. United States v. Jones, 759 F.2d 633 (8th Cir.1985).

When Mr. Davis refused to obey the officer's command while in the vehicle, repeatedly removing his hands from the headrest and reaching within the car and about his person, there may have been probable cause to arrest him.[2] Nevertheless, the Court need not reach that juncture where, as here, the defendant passenger's movements and behavior of non-compliance during a night-time investigation and arrest of a drug purchaser raised an objectively reasonable and articulable suspicion that Mr. Davis might be "armed and presently dangerous." Terry at 30.

To have an adequate foundation for the limited search performed on Mr. Davis, the officers "must have constitutionally adequate, reasonable grounds for doing so." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). "[The officer] must be able to point to particular facts from which he reasonably inferred that

---

[2]The government's argument for probable cause is predicated on the contested fact that Mr. Davis violated the Ohio open container law. The Court need not adjudicate the boundaries of that fact where, as here, the uncontested facts yield a reasonable and articulable suspicion that Mr. Davis' non-compliant behavior required further evaluation that he might be armed and dangerous. Mr. Davis' resistence toward the officers after exiting the vehicle substantiated that suspicion. Nevertheless, if there was probable cause to arrest the defendant, the officers necessarily had authority to search him incident to that arrest and discover the gun in his possession. United States v. Robinson, 414 U.S. 218, 234-35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (discussing and affirming the search-incident-to-a-lawful-arrest rule). Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Probable cause exists where it is shown that, at the moment the arrest was made, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

The Sixth Circuit has recognized that because probable cause demands no more than "a probability or substantial chance of criminal activity," Illinois v. Gates, 462 U.S. at 244 n. 13 (quoted in United States v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989), the "Fourth Amendment does not require that a police officer know that a crime has occurred at the time the officer arrests or searches a suspect." United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998). See also United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996). Probable cause is a standard more stringent than reasonable suspicion, see United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.), cert. denied, 513 U.S. 907 (1994), but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false. U.S. v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir. 1988) (citing Texas v. Brown, 460 U.S. 730, 742 (1983)). Thus, in determining whether probable cause exists, the Court must look to the "totality of the circumstances," Gates, 462 U.S. at 230-31, and view the facts "as a whole and in a practical manner." United States v. Pepple, 707 F.2d 261, 263 (6th Cir.1983).

the individual was armed and dangerous." Id. When assessing these particular facts, courts are to consider the totality of the circumstances, recognizing "that roadside encounters between police and suspects are especially hazardous." Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Taken as a totality, Mr. Davis' furtive behavior, his non-compliance with the officers request while in the car and his resistance to the officers outside of the vehicle, combined with the simultaneous arrest of the male for drug possession, and the presence of three passengers in the vehicle at night near a known drug house, provided the basis for the officers' reasonable belief that the defendant might be armed and dangerous. Requiring Mr. Davis to exit the vehicle and submit to a limited pat down search of his person as a means of evaluating the officers' suspicion was a reasonable response to that suspicion and within the ambit of what is allowed by Terry and Fourth Amendment jurisprudence.[3]  See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (the Supreme Court noted that "[o]ur cases have also recognized that nervous, evasive behavior is a pertinent factor in determining

---

[3] It is certainly the case that while individual factors might not be sufficient, a collection of individually insufficient factors can give the police justification to frisk a detainee: "In reviewing the reasonableness of a Terry stop, a court must consider all of the relevant circumstances, which 'are not to be dissected and viewed singly'; rather they must be considered as a whole." United States v. Gilliard, 847 F.2d 21, 24 (1st Cir. 1988) (quoting United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987)). Recognizing that officers make on-the-spot decisions in dangerous situations, the analysis is one of reasonable belief, not whether the officers were certain or ultimately correct about whether there was a threat. For instance, see United States v. Ervin, 59 Fed. Appx. 631, 635 (6th Cir.2003) (it was reasonable for an officer to conduct a pat down of the defendant because he produced two driver's licenses belonging to other drivers before providing his own, which was suspended, his hands were shaking badly, and he and the passenger gave inconsistent reasons for their trip) and United States v. Foster, 376 F.3d 577, 586 n. 7 (6th Cir.2004) (because an officer is permitted to conduct a reasonable search for weapons for his protection when he has reason to believe he is dealing with an armed and dangerous individual, an officer who had previous dealings with people under the influence of PCP was justified in conducting a pat down for concealed weapons of the defendant, who smelled of PCP, because he believed he posed a potential threat of violence).

reasonable suspicion"). As the Sixth Circuit recognizes, police officers are entitled to pat down outer layers of a person's clothing if they have reason to believe they are dealing with an armed and dangerous individual, regardless of whether they have probable cause to arrest the individual. See Unites States v. Caicedo, 85 F.3d 1184, 1189 (6th Cir.1996); United States v. Davis, 430 F.3d 345, 353-54 (6th Cir.2005); United States v. Bailey, 302 F.3d 652, 657-58 (6th Cir.2002).

Accordingly, the search was justified even if the officers did not actually arrest Mr. Davis, but rather briefly detained him as authorized under Terry. An officer may lawfully conduct a protective search while conducting a Terry stop. In particular, the Supreme Court has held that a police officer may perform a limited search for weapons during a Terry stop when the officer reasonably suspects the individual being detained may be armed and dangerous. See Terry, 392 U.S. at 30-31, 88 S.Ct. 1868.

Determining whether an officer's protective search was reasonable for purposes of the Fourth Amendment involves two inquiries. First, the Court must decide whether the search was justified at its inception. Second, the Court must determine if the search was reasonably related in scope to its protective purpose. See id. at 19-20, 88 S.Ct. 1868.

To initiate a protective search, an officer need not be absolutely certain that a suspect is armed. Rather, the inquiry focuses on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 20, 88 S.Ct. 1868.

Here, the Court finds that the officers had a reasonable basis for concluding their safety was in danger. Defendant Davis had already disobeyed the officers' orders to

10

keep his hands visible in the vehicle; he repeatedly removed his hands from the headrest and brought them back toward his body and toward the floor where the officers had difficulty maintaining visibility of his actions.  Those series of movements, his acts of disobedience, coupled with the defendant's resistance upon exiting the vehicle, supported the officers belief that Mr. Davis posed a potential threat to their safety.  See United States v. Moorefield, 111 F.3d 10 (3rd Cir. 1997) (frisk of a passenger in a car constitutional in part due to the furtive movements by the passenger);  United States v. Denney, 771 F.2d 318 (7th Cir. 1985) (defendant's furtive gesture of moving toward the right side of his vehicle is properly considered by courts as a factor when assessing the permissibility of a frisk);  United States v. Nash, 876 F.2d 1359 (7th Cir. 1989) (defendant's lifting himself off the car seat and reaching down is behavior appropriately considered by officers in the permissibility of a pat-down search).

      Next, the Court must determine whether the officers were justified in the scope of the search in which they engaged.  The protective search endorsed in Terry, as in this instance, involved a pat-down of a suspect's outer clothing.  That limited search was found constitutionally firm.  Mr. Davis could have gained immediate access to a weapon carried in the outer layers of his clothing; a limited pat-down search might reveal the existence of such a weapon.  Accordingly, the officers' substantially proscribed search of Mr. Davis' person was a constitutionally sufficient protective search under Terry.  The evidence recovered from Mr. Davis' back pants pocket is therefore admissible.

## III. CONCLUSION

11

For the reasons discussed above, this Court denies Mr. Davis' motion to suppress the evidence seized pursuant to a protective search of his person.

IT IS SO ORDERED.

      /s/Lesley Wells
UNITED STATES DISTRICT JUDGE