IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

UNITED STATES OF AMERICA : CASE NO. 1:06 CR 00205
:
Plaintiff :
:
-vs- : MEMORANDUM OF OPINION AND
: ORDER DENYING DEFENDANT'S
: MOTION TO SUPPRESS AND
MARIO D. DAVIS : DENYING MOTION FOR RELEASE ON
: BOND
Defendant :

---

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is defendant Mario Davis' ("Mr. Davis") motion to suppress any evidence seized during a search of his person by Mansfield, Ohio police officers as lacking in either probable cause or reasonable suspicion and, thus, a violation of his rights under the Fourth Amendment. (Docket No. 14). In response, the government maintains the officers operated within the bounds of the law to effect the arrest of Mr. Davis for obstruction and violation of the local open container law and, further, argues the officers possessed reasonable suspicion for a limited search of Mr. Davis' person. (Docket No. 16).

The Court convened a hearing in this matter on 5 December 2006. Testifying before the Court were Mansfield Police Officers Jason Bammann and Philip Messer, Jr., defendant Mario Davis, and Steven Gambetta, an investigator from the Federal Defender's office. As a result of the testimony and upon review of the law, the Court determines the officers possessed probable cause to arrest Mr. Davis and search his person incident to arrest. In addition, the Court concludes, even if the officers lacked probable cause, they clearly possessed reasonable suspicion to perform a limited search of Mr. Davis' person, a search that yielded a loaded firearm in the defendant's back pants pocket. Finally, for the reasons set forth below, the Court denies defendant's motion to vacate his detention and set bond.

## I. FACTUAL BACKGROUND

The government relates that on 23 February 2006 at approximately 7:30 p.m. Mansfield police, driving on patrol in a marked car, passed a known drug house at 157 Distl Avenue in Mansfield, Ohio. (Pl. Brief, Exhibit 1, Police Report). The patrolling officers witnessed a male, later identified as Dwayne Larkins ("Mr. Larkins") leaving the drug house. (Hearing Transcript at 9, hereinafter "Tr."). Both officer Bammann and Messer testified to their observation that as the patrol car drove up behind Mr. Larkins, he looked toward the patrol car and began walking faster toward a parked 1996 Pontiac Grand Am. (Tr. at 10).

Officer Bammann testified that as he exited the patrol car he called out to Mr. Larkins: "Hey stop, I need to talk to you for a second, come here, let's talk" (See tr. at 11). According to the testimony, Mr. Larkins did not stop or heed the Officer's remarks,

2

but instead walked up to the parked Grand Am, directly opened the front passenger-side door and turned to face the approaching officer. (Tr. 12-14). Officer Bammann testified that Mr. Larkins then placed his right hand, which was clutching something, inside the car and placed his right foot on the door frame of the vehicle. (Tr. at 15). The parked Grand Am held three other passengers, including Mr. Davis, who was seated in the rear, driver's side seat.

Officer Bammann testified that he asked Mr. Larkins to remove his right hand from inside the vehicle and show the officer his hand. (Tr. at 15-17). According to the testimony, Mr. Larkins initially ignored the officers' request, then opened his hand and let an object drop inside the car. (Tr. at 17). That object turned out to be a bag of crack cocaine. Id. Officer Bammann witnessed this activity, pulled Mr. Larkins from the door of the vehicle and toward the back of the Grand Am where the officer placed him under arrest. Officer Bammann testified that as he was working to place Mr. Larkins under arrest he could see Mr. Davis moving about in the vehicle and he ordered the passengers to place their hands in plain view. (Tr. at 18).

Testimony revealed that as Officer Bammann was effecting the arrest of Mr. Larkins over the rear hood of the Grand Am, Officer Messer continued to direct the three occupants in the vehicle to place and keep their hands in plain view, on the steering wheel and headrests. (Tr. at 58). Officer Messer testified the passenger in the left rear seat of the Grand Am, defendant Mario Davis, failed to comply with the officer's repeated order to place and keep his hands on the headrest. (Tr. at 59). Officer Messer related that Mr. Davis continued to remove his hands from the headrest, on one occasion reaching down to the floorboard of the vehicle. The officer further testified Mr.

3

Davis picked up a brown bag containing an open can of beer and threw it out of the rear car window. Id. At that point, officer Messer testified, he opened the rear passenger door and ordered Mr. Davis from the vehicle. Mr. Davis refused, according to officer Messer, whereupon the patrolman reached in and pulled Mr. Davis from the vehicle and ordered the defendant to spread his legs and keep his hands above his head. (Tr. at 60-61). Mr. Davis did not comply according to Officer Messer but continued to reach for his left rear pocket. Id. Officer Messer related to the Court he told Mr. Davis he was going to handcuff the defendant so that he could perform a pat down search. (Tr. at 61-62). Officer Messer then handcuffed Mr. Davis and proceeded to pat him down. Officer Messer testified that he felt a hard object in the shape of a handgun in the defendant's rear pants pocket; the patrolman reached inside Mr. Davis' rear pants pocket and found a loaded Jennings, model J-22, .22 caliber pistol, serial number 436982. (Tr. at 63). That seized evidence is the gravamen of the current indictment by the government and the instant suppression motion by Mr. Davis.

At the hearing, Mr. Davis testified that he was in the vehicle with the car doors locked while the driver and passengers were waiting for Mr. Larkins, his cousin, to return. (Tr. at 73-74) He testified he did not know the reason for the stop or what business Mr. Larkins was engaged in, but was only in the car for a ride to a friend's house. (Tr. at 72). Mr. Davis testified to seeing "three or four" police cars following Mr. Larkins to the Grand Am. (Tr. at 75). During the arrest of Mr. Larkins and at the time officer Messer was instructing the passengers to keep their hands in plain view, Mr. Davis related he could not unlock his passenger door. (Tr. at 77). He further related the movement officer Messer witnessed was the defendant gesturing to the officer that

he could not unlock the door. (Tr. at 78-79). Mr. Davis testified the driver controlled the door locks and that she locked all the doors from the driver's automatic control panel after Mr. Larkins left. (Tr. at 78). Mr. Davis further testified that when Mr. Larkins returned, the driver unlocked only the front passenger-side door, not by using the automatic control panel, but by leaning across the front seat to manipulate the handle. (Tr. at 74-75, 84). Mr. Davis admitted that neither of the other two passengers were removed from the vehicle. (Tr. at 81-82). He also denied putting his hands lower than his lap or gesturing in any manner other than to tell officer Messer he was unable to unlock the car door; further, he denied pouring beer out the window and denied reaching for his rear pants pocket after stepping from the vehicle. (Tr. at 85).

Mr. Davis seeks to suppress the firearm evidence as ill gotten fruit of an illegal search in which the officers exceeded their authority under the Fourth Amendment. Mr. Davis maintains the officers lacked probable cause to believe that he had or was committing a crime and did not possess the reasonable suspicion necessary to justify a stop under Terry v. Ohio, 392 U.S. 1, 22-24 (1968). (Def. Brief p. 3).

The government argues in its brief in opposition that the officers did possess probable cause to arrest Mr. Davis for obstructing official business in violation of Ohio Revised Code § 2921.31 and for violating the State's open container law pursuant to Ohio Revised Code § 4301.62. (Pl. Brief pp. 13-14). It further maintains the officers possessed reasonable suspicion to effect a limited search under Terry pursuant to the totality of the circumstances. (Pl. Brief pp. 18-27).

In reply, Mr. Davis contends that he was seized for purposes of the Fourth Amendment when the officers first requested he place his hands on the headrest in

5

front of him. (Def. Reply Brief, pp. 3-5). Mr. Davis also contests the government's assertion of probable cause predicated on his allegedly obstructing official business in violation of ORC § 2921.31 and violating Ohio's open container law, ORC § 4301.62. (Def. Reply Brief, pp. 4-5). Mr. Davis specifically denies the government's assertion that he threw a beer can out of the window of the Pontiac. Id. Mr. Davis also contends that Ohio's open container law requires that a beer can, possessed in violation of the open container law, must have had beer in it at the time of the alleged violation.

## II. LAW AND ANALYSIS

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection extends to shield the individual from unreasonable arrests and searches by requiring the executed actions rely on probable cause. Draper v. United States, 358 U.S. 307 (1959). Our judiciary recognizes, as well established, a defendant's right to urge the suppression of evidence obtained in violation of the Fourth Amendment if the defendant demonstrates an absence of probable cause or reasonable suspicion for the search and seizure. Aldeman v. United States, 394 U.S. 165 (1969); Rakas v. Illinois, 439 U.S. 128 (1978).

### A.     Probable Cause to Arrest Mr. Davis.

Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Probable cause exists where it is shown that, at the moment the arrest was made, the "facts and circumstances within

6

the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

The Sixth Circuit has recognized that because probable cause demands no more than "a probability or substantial chance of criminal activity," Illinois v. Gates, 462 U.S. at 244 n. 13 (quoted in United States v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989), the "Fourth Amendment does not require that a police officer know that a crime has occurred at the time the officer arrests or searches a suspect." United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998). See also United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996). Probable cause is a standard more stringent than reasonable suspicion, see United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.), cert. denied, 513 U.S. 907 (1994), but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false. U.S. v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir. 1988) (citing Texas v. Brown, 460 U.S. 730, 742 (1983)). In determining whether probable cause exists, the Court must look to the "totality of the circumstances," Gates, 462 U.S. at 230-31, and view the facts "as a whole and in a practical manner." United States v. Pepple, 707 F.2d 261, 263 (6th Cir.1983).

The government argues that the officers possessed probable cause to arrest Mr. Davis for obstructing official business in violation of ORC § 2921.31 and for violating the State's open container law pursuant to ORC § 4301.62. Officer Messer testified to removing Mr. Davis from the vehicle after he poured a can of beer out of the car

window. The defendant testified he did not pour a can of beer out the car window because the window was not rolled down and he could not open the locked car door. The defendant also argues that even if he threw a can of beer out of the car window, the action would only violate the open container law if the can contained beer.

The advantage of holding a hearing in this matter to parse the contested facts is the benefit it affords the Court to observe witness testimony and determine credibility. In this instance, the Court finds officer Messer's testimony regarding his encounter with Mr. Davis entirely credible. However, Mr. Davis' testimony, as it pertained to his encounter with officer Messer, lacked credibility. For instance, Mr. Davis' testimony regarding the driver's actions in locking and unlocking the car doors failed to provide any reasonable basis for the Court to believe the driver would not simply unlock the car doors using the automatic switches available to her rather than leaning over to unlock only Mr. Larkins' door. It appears clear from the testimony that Mr. Davis' door was not locked and his window was rolled down far enough to discard a can of beer, an action consonant with officer Messer's credible testimony. Moreover, even if the Court had found credible Mr. Davis' testimony that all the car doors remained locked but for Mr. Larkins', the Court did not find credible Mr. Davis' explanation for why his non-compliant behavior differed from that of the other two passengers. Mr. Davis testified that all of the car doors were locked except Mr. Larkin's, yet his testimony did not address why the defendant, alone, failed to comply with the officer's orders to keep his hands in plain view.

Officer Messer's credible testimony, that he removed Mr. Davis subsequent to the defendant tossing a can of beer from the car, provides a probable cause basis upon

8

which to affect an arrest, pursuant to O.R.C. 4301.62. Accordingly, officer Messer's search of Mr. Davis' person incident to the defendant's lawful custodial arrest was a reasonable search under the Fourth Amendment. See New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Robinson, 414 U.S. 218, 235 (1973).

### B.     Reasonable Suspicion to Search Mr. Davis.

Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), the police may carry out an investigative stop based upon reasonable suspicion the individual is engaged in criminal activity. Attendant with that stop, the police may pat down an individual for weapons. *Terry* 392 U.S. at 22-24. The Court held in *Terry*:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.*, at 30. The Court expounded on *Terry* in *United States v. Cortez*, 449 U.S. 411, 417-418 (1981), stating,

> [a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity ... the totality of the circumstances--the whole picture--must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

In view of the testimony in this case, the evidence found on Mr. Davis' person is not subject to suppression even if the officers possessed something short of probable

9

cause. Courts have long held that a law enforcement officer who lacks probable cause sufficient to justify an arrest may briefly detain an individual for investigative purposes without violating the Fourth Amendment if the officer possesses a "reasonable suspicion that [the defendant] was engaged in wrongdoing when [the officer] encountered him." U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (courts have taken to calling these brief investigative seizures, Terry stops). See also United States v. Lopez-Arias, 344 F.3d 623, 627 (6th Cir.2003) (holding that "courts have recognized that a law enforcement officer who lacks probable cause to justify an arrest may nevertheless briefly detain an individual without violating the Fourth Amendment if the officer possesses a reasonable and articulable suspicion that the individual has committed a crime").

Defendant argues that prior to the formation of any reasonable suspicion a seizure occurred (and the Terry stop began) when the officers ordered him to keep his hands on the headrest in the car in plain view. Def. Br. at 4-5. The government argues that defendant was not truly seized until the officers ordered him out of the car and asked him to submit to a pat down search; Mr. Davis' noncompliant behavior caused the officers to handcuff him prior to the pat down search for their own safety. The government's argument is predicated in part on the Supreme Court's decision in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), which held that a defendant must submit to a show of authority in order for that defendant to be seized for Fourth Amendment purposes. See id. at 629, 111 S.Ct. 1547. At the point the defendant asserts he was seized, the officers, for their own safety, were

10

entitled to command Mr. Davis and the other two passengers to keep their hands in view.

Credible testimony indicates officer Messer made repeated requests of Mr. Davis to comply with the request to keep his hands in plain view prior to removing him from the vehicle. Mr. Davis' testimony that he continued to gesture to the officer supports the conclusion that he did not comply with the order to keep his hands on the headrest in plain view. The officer was entitled to enforce his command until the situation was evaluated. That officer Messer's credible testimony indicates that Mr. Davis did not comply, even when ordered out of the vehicle, is proof under Hodari that he was not seized until officer Messer handcuffed him in an effort to ensure the officers' safety and Mr. Davis' compliance to a reasonable, lawful request.

With regard to officer Messer's request that Mr. Davis exit the vehicle, Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) stands for the proposition that without any showing that the particular suspect may be armed, an officer may require a person lawfully stopped to step from a vehicle in order to diminish "the possibility, otherwise substantial, that the driver can make unobserved movements." Id. The Mimms rule is equally applicable to passengers such as Mr. Davis pursuant to Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Both Mimms and Wilson recognize the minimal added intrusion of a request to exit a vehicle as justified in the interest of the officer's safety.

To have an adequate foundation for the limited search performed on Mr. Davis, the officers "must have constitutionally adequate, reasonable grounds for doing so." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). "[The

11

officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Id. When assessing these particular facts, courts are to consider the totality of the circumstances, recognizing "that roadside encounters between police and suspects are especially hazardous." Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Reviewing the testimony in its totality, Mr. Davis' movements and behavior of non-compliance during a night-time investigation and arrest of a drug purchaser in the proximity of a drug house known for gun violence, raised an objectively reasonable and articulable suspicion that Mr. Davis might be "armed and presently dangerous." Terry at 30. Requiring Mr. Davis to exit the vehicle and submit to a limited pat down search of his person as a means of allaying officer Messer's suspicion was a reasonable response to that suspicion and within the ambit of what is allowed by Terry and Fourth Amendment jurisprudence.[1] See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (the Supreme Court noted that "[o]ur cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion").

As the Sixth Circuit recognizes, police officers are entitled to pat down outer layers of a person's clothing if they have reason to believe they are dealing with an armed and dangerous individual, regardless of whether they have probable cause to

---

[1] It is certainly the case that while individual factors might not be sufficient, a collection of individually insufficient factors can give the police justification to frisk a detainee: "In reviewing the reasonableness of a Terry stop, a court must consider all of the relevant circumstances, which 'are not to be dissected and viewed singly'; rather they must be considered as a whole." United States v. Gilliard, 847 F.2d 21, 24 (1st Cir. 1988) (quoting United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987)). Recognizing that officers make on-the-spot decisions in dangerous situations, the analysis is one of reasonable belief, not whether the officers were certain or ultimately correct about whether there was a threat.

arrest the individual. See Unites States v. Caicedo, 85 F.3d 1184, 1189 (6th Cir.1996); United States v. Davis, 430 F.3d 345, 353-54 (6th Cir.2005); United States v. Bailey, 302 F.3d 652, 657-58 (6th Cir.2002).

Accordingly, the search was justified even if the officers did not actually arrest Mr. Davis, but rather briefly detained him as authorized under Terry. An officer may lawfully conduct a protective search while conducting a Terry stop. In particular, the Supreme Court has held that a police officer may perform a limited search for weapons during a Terry stop when the officer reasonably suspects the individual being detained may be armed and dangerous. See Terry, 392 U.S. at 30-31, 88 S.Ct. 1868.

Determining whether an officer's protective search was reasonable for purposes of the Fourth Amendment involves two inquiries. First, the Court must decide whether the search was justified at its inception. Second, the Court must determine if the search was reasonably related in scope to its protective purpose. See id. at 19-20, 88 S.Ct. 1868.

To initiate a protective search, an officer need not be absolutely certain that a suspect is armed. Rather, the inquiry focuses on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 20, 88 S.Ct. 1868.

Here, the Court finds, pursuant to the credible testimony of officers Bammann and Messer, the police had a reasonable basis for concluding their safety was in danger. Mr. Davis' testimony, that his gestures were attempts to communicate that his door was locked, does not bear the weight of scrutiny. Credible testimony established that Mr. Davis had already disobeyed the officers' orders to keep his hands visible in

13

the vehicle; he repeatedly removed his hands from the headrest and brought them back toward his body and toward the floor where the officers had difficulty maintaining visibility of his actions. Indeed, Mr. Davis' testimony does not actually contradict the officers' testimony that he failed to keep his hands on the headrest as ordered. Those series of movements, his acts of disobedience, coupled with the defendant's resistance upon exiting the vehicle, supported the officers belief that Mr. Davis posed a potential threat to their safety. See United States v. Moorefield, 111 F.3d 10 (3rd Cir. 1997) (frisk of a passenger in a car constitutional in part due to the furtive movements by the passenger); United States v. Denney, 771 F.2d 318 (7th Cir. 1985) (defendant's furtive gesture of moving toward the right side of his vehicle is properly considered by courts as a factor when assessing the permissibility of a frisk); United States v. Nash, 876 F.2d 1359 (7th Cir. 1989) (defendant's lifting himself off the car seat and reaching down is behavior appropriately considered by officers in the permissibility of a pat-down search).

    Next, the Court must determine whether the officers were justified in the scope of the search in which they engaged. The protective search endorsed in Terry, as in this instance, involved a pat-down of a suspect's outer clothing. That limited search was found constitutionally firm. Mr. Davis could have gained immediate access to a weapon carried in the outer layers of his clothing; a limited pat-down search might reveal the existence of such a weapon. Accordingly, officer Messer's substantially proscribed search of Mr. Davis' person was a constitutionally sufficient protective search under Terry. The gun recovered from Mr. Davis' back pants pocket is therefore admissible pursuant to the law and the credible testimony of the officers.

### III. **MOTION FOR RELEASE ON BOND**

Also before the Court is Mr. Davis' motion to vacate his detention order and set bond. (Docket No. 30). The government opposes the defendant's request. (Docket No. 31). For the reasons discussed below the Court will deny Mr. Davis' request to vacate his detention and set bond.

Mr. Davis has the right of this Court's *de novo* review of Magistrate Judge McHargh's detention order pursuant to 18 U.S.C. § 3145(b). United States v. Alexander, 745 F. Supp. 421, 423 (N.D. Ohio 1990). Title 18, United States Code Section 3142 governs pretrial release and provides that a defendant shall be released pending trial so long as conditions can be set that will reasonably assure the defendant's appearance and the safety of the community. Accordingly, Mr. Davis shall only be detained if the Court finds that "no condition or combination of conditions will reasonably assure [his] appearance as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

The government bears the burden of establishing, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of the community, 18 U.S.C. § 3142(f), or establishing, by a preponderance of evidence, that no condition or combination of conditions will reasonably assure Mr. Davis' appearance as required, United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991); United States v. Hinton, 113 Fed. Appx. 76, 77 (6th Cir. Sep. 20, 2004); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Upon review of the parties' briefs, the transcript of Mr. Davis' detention hearing, and the factors laid down in 18 U.S.C. § 3142(g), the Court determines the government

15

has met its burden of showing by clear and convincing evidence there are no conditions of release that will ensure the safety of the community. Mr. Davis' record exhibits a repeated inability to conform his conduct to appropriate societal norms. In addition, Mr. Davis' multiple failures to appear for Court dates in past cases seriously undermine his present request. Finally, the present indictment for felony possession of a weapon outlines this Court's concern that Mr. Davis willingly engages in illegal behavior that poses a danger to the community.

## IV. CONCLUSION

For the reasons discussed above, this Court denies Mr. Davis' motion to suppress the evidence seized pursuant to a protective search of his person. The Court also denies Mr. Davis' motion to vacate his detention order and set bond.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE